Rory Little for the Liquidators, appointed by the Antiguan Court in 1999. I intend to reserve three minutes for rebuttal. I have a hard time keeping track of all of the arguments in this case, so this chart simply lists what I consider to be the four primary arguments. There are other arguments, and if your honors have questions, of course, I'll answer on anything that you would request. There are four independent reasons why the judgment below should be reversed, and the two bank accounts should be returned to the Antiguan liquidation proceedings, which were begun in 1999. First, the government now belatedly has admitted that one account cannot be traced to criminal conduct at all. It is not the defendant's property related to account of conviction, which is what Section 853A requires. Second... That's the Ukrainian bonds. That's the Ukrainian bonds account, yes, your honor. But are they giving up their claim to them? They admit that they can't trace it, but they're not giving up their claim to them, are they? They're trying to get every penny they can get, your honor. Okay. Second, the district court has permitted the forfeiture, and this is conceded, I believe, of the interest of innocent depositors. They're innocent depositors. Their existence is undisputed. It's a very large amount of money, and these accounts are correspondent accounts held by the bank, not held by Lazarenko. So innocent depositors. Third, any interest that the government had in any of these accounts was extinguished by the doctrine of res judicata because they tried to push this civil forfeiture case, the case separate from this one, to an adverse judgment. They lost, and now they're back again. And if we adopt the First Circuit's position, you win, right? We should win on all counts, and if you don't, I submit there will be a circuit split. And the fourth reason is that there is a longstanding rule which is jurisdictional. Explained most clearly in the Bank of New York case, a 1936 case involving Russian bank accounts, coincidentally, that the first sovereign court to take jurisdiction in a property dispute should be deferred to by the federal courts. This court in the 1985 Cadillac case declared that that is a jurisdictional rule. The Second Circuit in the Chesley case has declared that that rule applies to foreign accounts. Your Honor, each of these rules, each of these arguments are independent, and each is sufficient to reverse below. All of these reasons, we believe, fall well within a constitutional reading of Section 853 and 6. Each demonstrates the liquidator's interest in the two bank accounts as being superior both to defendants, who the government concedes never had any lawful interest at all in these monies, as well as to the United States. Defendant, you mean Lazarenko, not Kirichenko. I do mean Lazarenko. That's correct, Your Honor. So let me just briefly go to each of these. On the innocent depositors, the existence of the innocent depositors is undisputed in excerpts of Record 48 and 51 and other governmental pleadings. Excerpt of Record 60 explains that the Antiguan courts have $25 million of claims from innocent depositors. They have only refunded $14 million. They say there's about $11 million left to be funded in Antigua. So the amount of money in dispute in this case is far exceeded by the innocent depositors in the Antiguan proceedings. In the Nava case, and I think it's important to recognize that the liberty interest in property is not a politically distributed interest in some sense. In other words, whether you ---- I don't understand that sentence. Well, it doesn't matter where you fall on the political spectrum. The interest in liberty in forfeiture cases is a strong interest. Judge Bybee in the Nava case wrote that criminal forfeiture cannot extend to the property of innocent owners. Justice Thomas and Justice Kennedy agreed in the James Daniel Goode case that the individual liberty finds its explication or its living being in the holding of private property, which is why the Due Process Clause becomes involved. Judge Easterbrook in the $34,200 case talks about how the government's theory of facilitation that one drop poisons the entire well makes no sense. That's a quote from Judge Easterbrook. The innocent depositors are represented by the liquidators. The liquidators are statutorily required under Antiguan law to represent the best interests of the depositors, and there has never been any contest as to that representation and those court orders in these proceedings. Those court orders start in the beginning of our excerpts of record and run through the first so many pages, 30 pages of the second volume. The second point is that one account here, the government conceded only at the end of the proceedings, only when they frankly did an amazing turnaround. They had argued that these accounts were proceeds of the crime throughout the proceedings. Suddenly, in April, right before Judge Breyer ruled, they said, oh, we've now obtained records from Merrill Lynch. Now, why they hadn't obtained records from Merrill Lynch in the beginning is unexplained, and we now realize that the Ukrainian bonds account, as Judge Beyer said, cannot be traced to criminal conduct. If that's true, criminal forfeiture cannot reach it. Criminal forfeiture is an impersonum action. It can only reach the property of the defendant, and this is clear in 853A, which says, first, any person convicted shall forfeit, so you must be convicted, and second, only any of the person's property, that's Lazarenko's property, that's used to facilitate. And I'll talk about facilitation in a minute. They've never argued. If you look at the indictment, the indictment talks about accounts controlled by Lazarenko. It doesn't talk about the bank being controlled by Lazarenko. The government tried repeatedly in front of the ---- I thought the bank was controlled by Lazarenko, though. That's a matter of fact. I don't think so, Your Honor. Let me respond to that. They tried to get Judge Jenkins and Judge Breyer both to make a finding that the bank was the alter ego of Lazarenko. Well, there's no direct finding to the contrary. In other words, I don't see a finding that, no, he did not have a controlling interest or ---- There's no finding in those words. Let me keep going. There's no finding to the contrary. And we do operate with respect to district courts on the principle that if the court was right for the wrong reason, we will still uphold what the court did. So it seems to me that if there are facts in the record from which we could conclude that he did, in fact, control the bank as distinct from any account in the bank, that that would not be a reason to overturn what the court did. That wasn't a terribly clear question, but ---- I understand your point, I think. I mean, let me get ---- I think there's a factual issue here. We submitted an appendix to our reply brief that is Judge Breyer's ruling in the civil fees case, the civil forfeiture case. Judge Breyer was responding to the government's argument that because Eurofed was controlled totally by Lazarenko, you know, we shouldn't get fees. This Court has already ruled on the fee matter. Here's what Judge Breyer said. The government has not sufficiently demonstrated that Eurofed may be held accountable for Lazarenko's conviction as his alter ego. As Judge Jenkins previously recognized, the trial record does not support the conclusion that Eurofed and Lazarenko are coextensive. So you're saying that's a sufficient finding to the contrary, and that it also is supported by evidence. It is, and the evidence in the record actually shows that Eurofed Bank was comprised of many different accounts, and that there were, in fact, innocent depositor accounts, that it's like any bank. I can put my money at the Bank of America, and I have my account. If a money launderer also uses the Bank of America, that doesn't taint my account. My account's not controlled by the money launderer. My account is controlled by the innocent depositor. Mr. Little, let me – on points 1 and 2, that you say the government can't trace on certain ones, and they admit that now, but they're still claiming the money, and the second innocent depositor's money was taken, if – let's just say for purposes of argument that I agree with you on that particular point. That still leaves other money, right? That wouldn't – that doesn't get the whole amount back. I think that's correct, Your Honor. But then if you get down to number 3, the res judicata. Yes. If I were to agree with your argument on that, then that covers all the money. It certainly does. And then you don't have to do anything else, right? You're absolutely correct, Your Honor. All right. The question I have about – all right. So you have these two procedures on res judicata. You have the – I mean, you have two. There's a civil forfeiture and a criminal forfeiture. Right. And there are two different remedies. On the res judicata of what happened, did – was everything really decided, or did they just get kicked out because of the statute? Well, the answer is, is that the civil forfeiture case was dismissed because they blew the statute. And they haven't blown the statute on the criminal. Well, we think they have. We think that's absolutely correct. All right. If I didn't think that they had, does res judicata still work? Absolutely. Absolutely, Your Honor. See, I mean, part of my concern that I have in this whole case is fundamentally, I think, as judges we believe that people – you know, if there's a forum to decide something, people should legitimately have a forum. And here you have a couple of things going on. You have you claiming, okay, you're out on the civil because you blew the statute, and therefore that precludes you on the criminal, even though you may not have blown the statute. There's a – they're making an argument there. Then on the other hand, we have the claims of the government in a prior proceeding saying, oh, you can bring up these three things. They say that. That's right. And the Court accepts that. And then they get here and they go, oh, no, no, no, no. You can't bring up those three things. You're right, Your Honor. And so it always bothers courts when people take inconsistent positions or that they feel that people are wrongly deprived of a forum to do something that they should be available. And so I guess on your side of it, when we've got the civil forfeiture and the criminal forfeiture, you know, I don't think that there's – there are two ways to go. And so I don't think automatically one precludes the other. But I guess why here – generally when you think of race judicata, is you don't want people just litigating, relitigating, and, you know, that they can keep coming back. At some point, the Court gave you your all and it didn't work. And so you just can't keep trying the same case again. Well, I think you're right, Your Honor. And Wright and Miller actually gives an entire section to the statute of limitations as a grounds for race judicata and how well established that rule is. It goes back to a Supreme Court case in the early 1900s written by Justice Holmes saying that a statute of limitations is a decision legislatively to preclude the entire cause of action so that a judgment based on statute of limitations is preclusive as to all matters that could have been raised or were raised. There's some other issues in this case about race judicata that deal with identity of parties and many other aspects of it. But I don't read the government's argument to encompass – I may be misremembering this, but I don't read them to be arguing that, in general, a statute of limitations dismissal is not claim – or claim preclusive. Your Honor, one of the frustrations that I've had and we have had for four or five years is that the government keeps changing its position. In the district court, the briefing in the beginning was perfectly clear. They argued statute of limitations can't be preclusive. No, but in this court, they're not arguing that anymore, as I see it. They've conceded it now. They've conceded – at least I believe they have. You could ask them. What their argument – and Judge Jenkins made the same point. Judge Jenkins said, you know, this is the same on all counts, except it's not the same claim. Now, my belief is that Judge Jenkins was confused as to the difference between a claim and an issue. The issue in both cases was absolutely the same. And the question was, is the money traceable to criminal conduct and, therefore, forfeitable? And that was the issue in the civil case and the criminal case. Not to bring up your own decision, Judge Callahan, but in the Holcombe case. We have to deal with what we've heard before. Well, in the Holcombe case, you had a case of a State administrative employment action. Later, they wanted to bring a 1983 First Amendment claim. The claims were different. 1983, State employment. The issue was the same, which is, had the person been terminated contrary to some So the government – I just want to make – I was trying to respond to Judge Callahan's question that statute of limitations is sort of a well-accepted ground for preclusion. The First Circuit case is even, you know, more sympathetic, if you will, to the other side. In the First Circuit case, the government voluntarily dismissed its action, believing it could go ahead with the criminal forfeiture case. And the First Circuit said, no. You voluntarily dismissed. It was a dismissal on the merits. And for that reason – and it's a very scholarly opinion – you're precluded in the criminal case, even if the criminal case is filed first. It's not what's filed first. It's which judgment is adverse first. Let me just say, Judge Callahan, the fourth argument also precludes on all grounds. The fourth argument is a very important – it's a version of Act of State. We've argued Act of State from the very beginning. And, Judge Callahan, when you say everyone should have a forum to resolve their issues, boy, do we agree with that. Antigua started in 1999 providing a forum to seize and freeze all of the assets of Eurofed Bank, which was located in Antigua, not here, and instituted a very lengthy set of proceedings which are still ongoing to dispose of those assets. It's the government's interference with those proceedings six years later through a series of misadventures and botching where the government has interfered with that process. The first-in-time rule is an easy jurisdictional rule for courts to follow. When two sovereign courts have asserted jurisdiction over the same res, the first-in-time should be given the opportunity to resolve the proceeding. That's what the rule has been, and that involved a bunch of Russian accounts that were up for grabs, if you will, after the revolution in 1917. Your Honor, I would like to reserve the remainder of my time unless the panel has questions. Thank you. We'll hear from the government. May it please the Court, Vijay Shankar with the Department of Justice. Your Honors, with all due respect to my esteemed colleague, in his entire argument, he never once mentioned the statutory framework that governs here, Section 853N6A and 6B. You have two problems in my mind, and I hope you'll address them both. The first has to do with judicial estoppel. In the previous, one of the previous iterations of this case, the government's brief had a section entitled, The liquidator's claims, which are without merit, all can be raised and resolved in the ancillary proceeding. And then you had a relatively lengthy discussion explaining that an ancillary proceeding provides the mechanism for resolving factual and legal disputes relating to third-party ownership of forfeited property. All of the liquidator's claims can be raised and resolved with appeal, if necessary, at the conclusion of that proceeding. And it goes on and on and on in the same vein. Now, granted, at oral argument, when I asked questions about that, the government gave a contrary answer, although a bit equivocal. But the written materials that were submitted to the court and on which the court expressly relied were that all of these issues could be raised in this proceeding. So my first question is, why aren't we all bound by that, particularly the government, having lured us into that holding? In good faith, I assume, we all acted in good faith, but there we are. So why don't we just go to the merits? So that's my first question to you. And then I have another one after that one. Okay. Your Honor, the point of the government's brief, and I won't defend its precise wording, but the point of the government's brief was that there were no arguments that could be made at that moment that could not be made at the ancillary proceeding. In other words, any arguments that went to ownership could be made at the ancillary proceeding and, therefore, could not be made at that moment, the interlocutory appeal. The government has been consistent in this case that they can't make them here, Your Honor, and that the third party cannot challenge the forfeitability of property. And we've been consistent in that position. Except that in the brief that I was just discussing from the previous case, that section of the brief clearly discussed res judicata, not barring forfeiture. It discussed the act of State doctrine doesn't bar the forfeiture. It dealt with all of the substantive issues that are now in front of us and said all of those claims can be raised and resolved with an appeal, if necessary, in the ancillary proceeding. And now you come before us on the very appeal that we mentioned there, that you've mentioned there, not you personally, the government, saying, well, no, we were mistaken. We don't really get to do that. But you may have been mistaken, but judicial estoppel. Well, I don't think we were mistaken. I think the point of the brief was that these arguments cannot be made now. They may be able to be made later, and the district court can say that. That's not what it said. With respect, sir, it's not what the briefing said in the previous case. The brief says that the arguments can be made later, correct? Yes. And the district court. Specifically in an ancillary proceeding and on an appeal from the ancillary proceeding. Right. And it's still within the power of the district court to determine whether the arguments are properly within the statutory framework for what can be a successful argument in an ancillary proceeding. Well, if all you're saying is, yes, you can consider all these issues, but my opponents are wrong, that's fine. But I understood you to be trying to argue here that we don't even get to look. I — that is our argument, that we do not get to consider those.  Well, my second question to you, I think I understand your answer. I'm not sure I agree with it, but I think I understand it. But my second question to you is why at least some of these arguments don't constitute, in fact, an argument to a superior right or interest, which to the defendant in the property, which is at least the text of the statute. Okay. Your Honor, if I could, real quick, to your first question. I would point the Court to ER-222. I'm sorry to continue answering that question just briefly. But the answer — the question was, can these arguments be made to us, made to the district court in the context of the ancillary proceeding, including the questions of claim preclusion? Ms. West, government's attorney, no. Okay. I understand that. And that's why I asked you what I did before. Right. The written briefing explicitly said that all of the arguments could be made, and it included a section about res judicata. In the written argument, the brief, even though the government later gave an equivocal or contradictory answer, at best, that made the government's position confusing, but the written submissions clearly told this Court that all of these issues, including res judicata, could come up in the ancillary proceeding and an appeal therefrom, which is an inconsistent position to the one that you're now taking. And because we obviously relied on it explicitly, I don't understand why judicial estoppel doesn't take us right to the merits. Well, again, Your Honor, I don't think the positions are clearly inconsistent. And our position then was that these arguments would have to wait until the ancillary proceeding. The district court could then determine whether they were – whether they are proper arguments under the statutory framework. And we gave that same answer in the oral argument. But now turning to your second question, their arguments do not fit under the statutory framework 853 and 6A and B because they don't establish a before-acquired interest, that is, an interest that vested in them before Mr. Lazarenko at the time of his crimes. They did not acquire an interest, if any, in this property until Mr. Lazarenko purchased this bank and deposited the money into it. I guess I still struggle with the fact of the United States government admitting that there are certain assets that they can't connect to criminal conduct and that the United States government still feels entitled to them over people that seem to be innocent depositors, or you can't show the connection. I mean, you know, having the power to grab money is not something I necessarily have a problem with. But, in fact, you know, I think that that's fine. But just take anyone's money. When you can't show that it's connected to criminal conduct, I do have a problem with it. Well, there's two separate issues here, Judge Callahan. There's the traceability issue and this innocent depositors issue. And I think they are – they should be separated out. I guess I – well, I'm struggling with both of them, why we would use the force of our government to claim a superior right to something when there are – we can't trace it and there are innocent depositors. Well, for starters, let's all recall and understand that this is not Bank of America or Chase or Citibank. This is a bank that the district court found and this court affirmed was purchased solely for the purpose of laundering this money. There is no question that this bank was controlled by Mr. – Mr. Lazarenko. This was alleged in the indictment. I know Mr. Little said it wasn't, but it's absolutely alleged in the indictment and in the conspiracy count that this bank was purchased, controlled by Mr. – Mr. Lazarenko solely for the purpose of laundering money. This is not a bank that held – Mr. – Mr. Little's brief refers to Bank of America holding one of the judge's accounts. This is not that situation. He controlled every investment decision in this bank and this bank was used to mask money laundering activity. That's what the jury found. That's what the district court found and that's what this court affirmed on appeal. But why did Mr. – why did Judge Breyer find that it was an alter ego? Oh, Your Honor, I'm glad you asked that question. This alter ego issue, with all due respect to Mr. Little, has been completely distorted. The government only presented an alter ego argument below as an alternative argument to say that the liquidators cannot participate in the ancillary proceedings because they – because Eurofed was the alter ego of Mr. Lazarenko and a defendant cannot participate in the ancillary proceedings. That's the only time the alter ego issue came up. And the district court said, well, I've got other reasons for saying they don't win on the ancillary proceedings, so I'm not going to go so far as to say that the bank and Mr. Lazarenko was – were coextensive. Now, we don't have to prove that the bank and Mr. Lazarenko were coextensive in order to establish a facilitation theory. Coextensivity and alter ego theories have nothing to do with that. There's no question that the bank facilitated the money laundering activity. Well, are you bothered if – is it because you don't believe that there are any innocent depositors in a bank that Mr. Lazarenko was involved with, or is it that you just think that it's punitive towards the whole process? I mean, if there – do you think there are any innocent depositors? We have no evidence that there were any innocent depositors. The burden of proof is on the liquidators. There have – they have never come forward with any evidence of innocent depositors. We have asked them. We specifically asked them. So you don't have to show that the funds are connected to criminal conduct. They have to show that they're not. Is that your position? In order to establish forfeitability, which we did, we had to establish that the money was involved in or traceable to criminal activity. The district court found a nexus. That's the end of the story. The property is then forfeited to the government, and there was no challenge to that. Well, what about the Ukrainian bonds? What did you show on that? Well, we showed the facilitation theory, as I just mentioned. This bank was used to mask the money laundering activity. Mr. Lazarenko controlled all the investment decisions. And I might note that 923,000 Ukrainian bonds, I think the district court was allowed to rely on circumstantial evidence that this money didn't come from you, Judge Callahan, with all due respect. It came from the Ukraine and from the person who controlled this bank. I don't think we had to show a direct traceability, as this Court said in its decision affirming the conviction. In a money laundering case, you don't have to show direct traceability if you show commingling, so that this account had otherwise dirty funds as well as Ukrainian bonds. Our initial theory of the exact money that was used to purchase those bonds, yes, that ended up being incorrect, and we immediately told the Court that. But we never wavered from our theory that the bonds were purchased. I'm sorry. The bonds and the rest of the money in the account constituted laundered money, and that the bank was used to facilitate this money laundering activity, and the district court agreed with this. But now, that's got nothing to do with whether they have a prior ownership interest. Could you, before you run out of time, address on the merits the preclusion argument, the civil forfeiture action? Basically, the government missed these assets and missed its deadline, and the question is whether there's any way for the government to pull the irons out of the fire. The dismissal for missing the deadline of the civil forfeiture action would be preclusive of a subsequent action that meets all the other requirements. So tell me why this one doesn't meet the other requirements and why we should reject the First Circuit's analysis. Well, we never missed our deadline in the criminal case. We satisfied our deadline at the moment of the indictment, and courts have been absolutely consistent in that. That has nothing to do with res judicata, does it? Well, it does, Your Honor, because the criminal forfeiture here came first. Okay? Well, if you had just not filed the civil and then you filed it in the criminal, then you wouldn't be in this situation, right? Yes. You would argue that you made it on time. Right. But you went for the civil. Yes. As we are permitted to do. And if it was on the – if it meets the elements of res judicata, then that's going to preclude filing of the criminal. With respect to those assets sought – only those assets sought in the civil proceeding, of course. So if there's a criminal proceeding about one pot of money, then a civil proceeding about a second pot of money that goes to conclusion, then the question is can you go after that second pot of money again in the criminal case? Whether it's timely or untimely isn't really the question, because claim preclusion applies to timely second actions as well as untimely second actions. Right. But I'm just getting at which action is first and second, which does – it does become relevant for claim preclusion. And I would say that your characterization of a first pot of money and a second pot of money is, with due respect, wrong. The criminal forfeiture allegation spoke of all money involved in or traceable to. And we weren't required to specify. Right. No, you weren't. But at some – when you first specified, you didn't specify these items that are now in contention. Well, we hadn't specified at the – at this moment anything. We had filed a motion for criminal forfeiture that spoke of all of the money involved in or traceable to this property. And we still hadn't been, at that moment, required to specify the property that we were going after. Now, we did at that point file a civil forfeiture proceeding, which the government does frequently and is allowed to do. And this Court recognized in the 1978 Piper-Cherokee case that the government is able to go both civilly and criminally and has reasons to do so because in the Piper-Cherokee case, for example, the conviction was thrown out. And this Court, in a footnote – I think it's footnote 2 – actually made the point of saying it's a good thing the government also went civilly after this money because that way it got to keep the money. The statutes allow for both civil and criminal forfeiture, and this Court has allowed for both civil and criminal forfeiture. So that being said, turning back to claim preclusion specifically, the fact that the civil forfeiture action, which was plainly also allowed, was dismissed on statute of  And that's because it was a preexisting criminal forfeiture action against all money involved in or traceable to the crimes. Well, let's say if it hadn't been on statute of limitations and you lost, would you have been able to file the criminal then? The criminal had already been filed, Judge Callahan. Well, let's use your language to get at what Judge Callahan is really asking. Let's suppose that you had sought only the Ukrainian bond money of X million dollars in the civil proceeding, and there was lengthy litigation about the Ukrainian bonds and where they originated, and there was a holding against the government that said, You cannot forfeit these Ukrainian bonds for the following 23 reasons. Here's a final judgment. Could you then go back in the old existing criminal case and re-ask for those same Ukrainian bonds? We could, Your Honor. We could. The statutes allow it. The statutes explicitly allow duplicative forfeiture actions, and the cases allow it. So you just say the government gets two bites out of the apple. Criminal, even if it's the same pot of money. The governor gets, well, is that your, that's got to be what your position is that you're saying that. Our position absolutely is that the government can proceed both civilly and criminally against the same assets. Even if they've lost in a final judgment as to a particular asset. Yes. And this Court, that's what happened in 1978, Cherokee. In that case, the criminal action was thrown out because the conviction was overturned, and the Court said nothing about the civil forfeiture. But I will note that the fact that the civil action was overturned on statute of limitations grounds only bolsters our position, because, as this Court has said, although a statute of limitations dismissal is a final judgment on the merits for res judicata purposes, it's not a substantive resolution of the property dispute. And that's exactly the type of language that the First Circuit in Kunan relied on. In that case, it was a substantive resolution of the property dispute. And that's why our case is clearly distinguishable from Kunan. I don't think that there would be any conflict created if this Court said that there was no res judicata preclusion. Your Honors, turning back to this innocent depositors issue, the biggest point here is that the liquidators do not represent them in the ancillary proceedings. No innocent depositors have come forward in the ancillary proceedings. The government published notice. No one has come forward. And the liquidators don't have standing to represent other third parties in the ancillary proceedings. And I would like to return again to the fact that there is a clear, comprehensive statutory scheme that governs here, and it provides only two mechanisms for proving ownership in the ancillary proceedings. And the liquidators have not and cannot establish either prong. They did not own this property before the crimes at issue, and they were not bona fide purchasers for value. And that really should be the end of the story. These other claims that they're making are attacks on the forfeitability of the property, and those are claims that under basic principles of standing, only a criminal defendant can make. Otherwise, if we don't have the liquidators in here, we could just as easily have Mr. Lazarenko's grandson in here saying, if this property had never been forfeited, I would inherit it. So I'm going to challenge his criminal conviction. I'm going to challenge the forfeitability. Then we could have his granddaughter in here saying the same thing. That's why Congress created a comprehensive statutory scheme that limited third-party intervention rights and gave them only two ways to challenge, to claim ownership. And if the Court has no further questions, the government will allow you to proceed. Thank you, Counsel. Thank you. Mr. Little, I'd like to have your response to Mr. Shanker's statement on interpreting Section 856N, saying there are only two grounds that liquidators can proceed on. First, they cannot prove that the bank had an interest in this cash before Lazarenko did, and secondly, the bank is not a bona fide purchaser, and therefore, there's no recovery under 866N. I have a number of responses, Judge, so let me know if I'm responding to what you really want to know. The first is that this Court has held, under the identical substantive language in the Crozier case, that if the language doesn't permit certain challenges, it's constitutionally inadequate because of the due process interest in property. So let me just say that if you were to hold narrowly on a reading of this statute that really is not compelled, that should be avoided because of the constitutional problem, and that no other court has adopted in circumstances like this, you'd be doing something unprecedented. Let me just say within the language, the Antiguan government seized this property in 1999 and instituted forfeiture and liquidation proceedings against it. They have, as a common law government from England, the same common law relation back authority that the United States claims. That is, the interest of the Antiguan government is prior to the defendant's criminal acts by operation of the very same doctrine that the government claims here. It relates back to the day of their criminal act. That's why governments can seize property, as Judge Callahan points out. Criminal forfeiture is a beneficial thing for the government to have, but it works for all governments, not just the U.S. So it is an interest prior. So you're saying the bank doesn't have to show that they had an interest in the cash before Glazerenko did? Well, let me just say two things. The innocent depositors did have an interest, and the idea that we don't represent them is just not supported. The orders of the Antiguan courts say that we're appointed to represent, quote, the best interests of all depositors, and that we are obligated under the Antiguan statute to take control of the assets for the liquidation proceeding. But the innocent depositors did have an interest superior to Glazerenko's before any of this. In other words, the money that was in the bank that was their money was their money. It's as though you or I had deposited it. So that's a separate pot. It's part of the assets. The assets, of course the liquidators who come into being in 1999 do not temporally exist in 1998 when the crimes are being committed. But the Relation Back Doctrine. I thought all the money that went into the bank was from Glazerenko. No, not true. Not true. And, Your Honor, the government says there's no evidence to support the existence of innocent depositors. I'll just point to excerpts of records 64 and 65. This is a declaration by one of the liquidators, filed in the proceedings below, never disputed, which says the Antiguan court has segregated assets in the Eurofed Bank. There are 73 claims submitted by claimants unrelated to Glazerenko. We've distributed $14 million to those innocent claimants. The factual existence of these people I don't think can be disputed on this record. The government today tries to run away from it, but they never disputed this in the district court. So there are those. The other point about N6, though, I really do think the court needs to understand that when you look at the various circuits, this circuit, the First Circuit, the other circuits have cases where they have examined on the merits arguments that go beyond the narrow reading, if you will, of N6 because of their constitutional avoidance doctrine, in other words, the Breckmeyer case, et cetera. This circuit, I don't think you can actually reject that reading, given closure. It binds you as a panel of the Court. I would like to say just a couple other things. He says there's nothing in the indictment. Let me just say on this facilitation thing, here's what the indictment says. Excerpts of Record 105. Kurochenko and Lazarenko transferred money into accounts, not into the bank, into accounts that he and Kurochenko controlled at Eurofed. These accounts were used. Not the bank was used. These accounts were used in part to conceal and disguise the nature and earnest and blah, blah, blah. So that's their claim for facilitation. It's limited to the accounts they controlled. Now, when they tried the case for seven weeks, Judge Jenkins after trial said, on the record, I was the trial judge, and I don't think the record supports the finding that there was an alter ego control, that is, everything was controlled by Lazarenko. Judge Breyer then reendorsed that, having looked at some of that testimony. Kagan. Thank you very much, Your Honor. Thank you very much. This has been quite an interesting case. We appreciate the arguments of both counsel. The case is submitted, and we adjourn for this morning's session.
judges: Graber, Callahan, Bea